KATHRYN E. AUDLEY, Respondent, *v.* THOMAS H. AUDLEY, Appellant.

First Department, April 8, 1921.

**Husband and wife — divorce — defense that marriage was incestuous — marriage between man and daughter of his half brother is void.**

The marriage between the defendant and the plaintiff, who was the daughter of defendant's half brother, was incestuous and void within the purview of subdivision 3 of section 5 of the Domestic Relations Law making void the marriage of uncle and niece, and, therefore, the marriage on which the action for divorce is predicated being void, there is no basis for the maintainance of the action.

APPEAL by the defendant, Thomas H. Audley, from an order of the Supreme Court, made at the Bronx Special Term and entered in the office of the clerk of the county of Bronx on the 23d day of April, 1920, denying defendant's motion for judgment on the pleadings.

*Harry S. Austin* of counsel [*Austin & Abruzzo,* attorneys], for the appellant.

*Herbert J. Cuskley,* for the respondent.

LAUGHLIN, J.:

This is an action for divorce. The complaint shows that the parties were married in this State on the 25th day of September, 1904; that there is no issue of the marriage and that the defendant has committed various acts of adultery at times and places specified. Defendant put in issue the material allegations of the complaint with the exception that he admits that no issue has been born to the parties, and alleged for a separate defense that the plaintiff was his niece, and that one John Audley was the father of the defendant and of the plaintiff's father; that the plaintiff's father was born in Ireland about the year 1859 as the result of a union between said John Audley and Catherine Audley, and the defendant was born in the city of New York on the 17th day of December, 1879, as the result of the union of said John

Audley and Catherine Kane Audley; that there was a cere-monial marriage between the plaintiff and the defendant performed by a clergyman in Dutchess county, N. Y., on the 25th day of September, 1904, which is the time and place specified in the complaint; and he prayed that the marriage be declared null and void. The facts so pleaded by the defendant are admitted by the reply. The facts alleged show that the defendant and the plaintiff's father were brothers of the half blood. The point presented for decision is whether the relationship of uncle and niece existed between the defend-ant and plaintiff within the purview of subdivision 3 of sec-tion 2 of the former Domestic Relations Law (Gen. Laws, chap. 48 [Laws of 1896, chap. 272], § 2; now Dom. Rel. Law [Consol. Laws, chap. 14; Laws of 1909, chap. 19], § 5), which so far as here material declares that a marriage is incestuous and void between " an uncle and niece or an aunt and nephew; " whether they are legitimate or illegiti-mate. Prior to 1893 incestuous and void marriages were limited to marriages between an ancestor and a descendant and a brother and a sister of either the whole or half blood (2 R. S. 139, § 3; *In re Williams,* 2 C. C. Rep. 143), and marriages between uncles and nieces and aunts and nephews have only been prohibited in this State since the enactment of chapter 601 of the Laws of 1893, amending said section 3 of the Revised Statutes. (*Weisberg* v. *Weisberg,* 112 App. Div. 231.) It is argued in behalf of the respondent that since in said subdivision 3, which was added in 1893, there is no reference to whether uncles and nieces or aunts and nephews are of the whole or of the half blood, the subdivision should be construed as prohibiting only marriages between an uncle and a niece or an aunt and a nephew of the whole blood, for the reason that the preceding subdivision 2 of section 2 relating to marriages between brothers and sisters expressly provided that it applied to brothers and sisters either of the whole or of the half blood. In 1880 the United States Circuit Court for the Northern District of New York, in a very able and exhaustive opinion written by Judge Wallace in *Campbell* v. *Crampton* (8 Abb. N. C. 363), in construing a statute of Alabama prohibiting marriages between an aunt and a nephew or an uncle and niece, and containing

no reference to whether they were of the whole or half blood, held that the prohibition extended to relatives of the half blood as well as relatives of the whole blood. It is, therefore, a reasonable inference that the Legislature which enacted the law in 1893 was aware of that decision and deemed it unnecessary to specify whether the relationship was of the half or of the whole blood. Moreover, in other jurisdictions, it has been held that a statute prohibiting such marriages and making them criminal, and containing no reference to whether the prohibition extended to relatives of the whole or half blood, embraces relatives of the half blood as well as those of the whole blood; and that is the general rule of construction applied to such statutes. (*Shelly* v. *State*, 95 Tenn. 152; *State* v. *Wyman*, 59 Vt. 527; *State* v. *Reedy*, 44 Kans. 190–192; Bishop Marr., Div. & Sep. § 748.) Furthermore, the specification of the whole or half blood with respect to brothers and sisters may have been incorporated for the reason that brothers and sisters of the half blood are commonly referred to as half-brothers and half-sisters, whereas in speaking of uncles and nieces and aunts and nephews no distinction is made with respect to whether they are of the whole or half blood. It may also be that in view of the fact that the former Legislature had by subdivision 2 expressly provided that the prohibition as to brothers and sisters was intended to relate to relatives of the half as well as of the whole blood, it was considered that the public policy of making no distinction between relatives of the whole and half blood in legislating on questions of marriage and incest was sufficiently shown, and that it was not deemed necessary to repeat that specification of relationship.

The decisions refer to the relationship of uncles and nieces and aunts and nephews as being of the whole or half blood, and for brevity, I have done so; but that is not strictly accurate because for an uncle and niece to be of the whole blood would require both parents of the niece to be of the whole blood with the uncle and that could only be if the parents of the niece were brother and sister of the whole blood. A niece, one only of whose parents is of the blood and of the whole blood with her uncle, would be of the half blood of the common ancestor while her uncle would be of his whole

blood; and if the parent of the niece who is of the same blood as the uncle is only of the half blood, then the niece would only be of the quarter blood while her uncle would be of the half blood of the common ancestor. This shows that it would not have been accurate for the Legislature to have adopted the same phraseology in said subdivision 3 as was adopted in subdivision 2; for with respect to lawful marriages uncles and nieces and aunts and nephews could not be of the whole blood. I deem it probable that the Legislature recognized this and addressed the prohibition against marriages in subdivision 3, not to the percentage of blood relationship, but to the relationship as generally known and understood, and on that theory it has prohibited marriages between an uncle and a niece or an aunt and nephew without regard to the percentage of their blood relationship. The prohibition was enacted for the benefit of the public health and the perpetuation of the human race. Since the closest relationship of an uncle and niece under a lawful marriage is that of the whole blood to the half blood and marriages of those so related are plainly prohibited, I think it would be unreasonable to impute to the Legislature the belief that the evils which it was anticipated would flow from such marriages would not befall the issue of a marriage between an uncle of the half blood and a niece of the quarter blood of the common ancestor. The marriage having been prohibited by law and declared to be void by said section 2 of the statute, it is as if no marriage had taken place between the parties. (*McCullen* v. *McCullen*, 162 App. Div. 599.) The marriage on which the action is predicated being void, there is no basis for the maintenance of the action for divorce.

It follows that the order should be reversed, but it being a matrimonial action, without costs, and motion granted, without costs.

DOWLING, SMITH, MERRELL and GREENBAUM, JJ., concur.

Order reversed, without costs, and motion granted, without costs.